Thank you. Good morning. May it please the court. My name is Hany Fukury with the Federal Public Defender's Office on behalf of Konrad Wolff. Your Honors, in this appeal there are essentially two kind of general categories of errors that we've complained about, a suppression issue and a sentencing issue. And I'll begin by the suppression issue. It is settled law that a private search nonetheless implicates the Fourth Amendment if police exceed the scope of the private search and infringe on privacy rights not yet extinguished by the private search. These principles apply equally to a seizure. Seizing Mr. Wolff's hard drive without a warrant, including content not already exposed by the private search of Mrs. Wolff, exceeded the scope of the private search and was an unreasonable seizure in violation of the Fourth Amendment. Any other rule would eviscerate – Sotomayor Can I stop you for a second? I thought the police obtained a warrant to search the hard drive. They did, Your Honor. But I think it's important to be clear about the sort of sequence of events that took place. Yeah. But you said searching it without a warrant violated the Fourth Amendment. They got a warrant before they searched it, didn't they? They did get a warrant. And if I use the word search, I may have misspoke. What I was trying to say, Your Honor, was the seizure of the entire drive exceeded the scope of the private search. So let's – I want to work this through because I'm not sure I understand your argument. Mrs. – I assume it's Mrs. Wolff. That's correct. Mrs. Wolff gives the officer the hard drive. Correct. He then obtains a warrant to search it. Correct. So tell me what in that sequence exceeds the Fourth Amendment's – violates the Fourth Amendment. It's the seizure of the entire drive when the private search only encompassed some portion of the content on the drive. But she gave them the entire drive. Correct. So we have cases, the binding precedent saying that the government's acceptance of materials provided by a third party is not even a seizure, or if it's a seizure, it's reasonable. Now, I understand you're saying that it was superseded by Jacobson and Jones. But Jacobson, our decision, Black, came after Jacobson, as the district court pointed out. And our standard for overruling our precedent is very high. It has to be irreconcilable. So why is Black not the controlling precedent here and requires us to find that either there was no seizure at all or any seizure was reasonable? Well, Your Honor, I think the important thing to note is I obviously cannot disagree that this Court has precedents authorizing a seizure. Exactly what happened. She gave them the hard drive and then she said, here, you can have all of his electronic material. So I think that's actually the distinguishing factor between Black and the other precedent that Your Honor relied upon. So, for example, in Black, the facts in Black were that the defendant had given his legal assistant or secretary a certain set of documents. And then that woman, the third party, gave the documents over to government law enforcement agents. And in that scenario, in that set of facts, the Court found, this Court found there was no seizure because of the voluntary relinquishment. I think the important distinguishing factor here is, first of all, Ms. Wolfe was not given the hard drive by Mr. Wolfe. And, second, even — Would that matter? Let's assume that Mrs. Wolfe stole the hard drive from Mr. Wolfe and then gave it to the police. Would that make their acceptance of it a Fourth Amendment violation? I think that speaks to the reasonableness of the seizure. No. I mean, it's a pretty simple scenario. You say she didn't have permission, so I'm going to make it even worse. I'm saying she lacked permission. He said, don't touch my hard drive. It has pornography on it. And she said, tough on you. I'm going to take it and give it to the police. And she did. Would that make the police's — the police's acceptance of the hard drive a violation of the Fourth Amendment? And if — if the police accept more than what — No, no. You can't keep — Okay. You can't change my scenario. Your scenario, you've got the hard drive. Mrs. Wolfe — and Mr. Wolfe says to Mrs. Wolfe, don't ever touch my hard drive. Don't ever look at it. There's things on there I don't want you to see. And she nonetheless looks in it, sees whatever disturbs her, calls the police and says, here's the hard drive. Is that — is their acceptance of the hard drive a violation of the Fourth Amendment? In — under those facts, it's our position that, yes. Well, tell me what case supports that. So I think — I think, first of all, Jacobson is — is, I think, the crucial precedent here. So in Jacobson, as the Court's aware, law enforcement seized a package that had been the subject of a private search. And obviously, the package was not intended for FedEx. It was intended to go to some other third party. But it was intercepted by FedEx, who examined it. It could tell that it had been tampered with. And once they looked at it, they could tell that it contained drugs. And the Supreme Court in Jacobson noted that the seizure — and first of all, they did find that there was a seizure. Even though that the package had been the subject of a private search, they nonetheless found there was a Fourth Amendment seizure. They then said the seizure was reasonable because of several factors. First, they found that the privacy interests had largely been compromised by the private action. In other words, once the Federal Express employees had seen what was in the box, all of the privacy interests there had essentially been extinguished. The other important fact in Jacobson was that the package really had what they called a distinctive character, meaning it could only appear to be one thing, which was drugs. And therefore, the Supreme Court said it was reasonable to seize that effect without a warrant and because the agents had already learned a great deal about the package. Well, how is that much different from the case we have here where the wife has seen the materials, had given the police then an indication as to what's on the hard drive? How is that much different than Jacobson? It was what? Some indication that the package had been pierced and some of the powder had shown? How is that much different than the wife's viewing of the pornography? Well, I think the first important difference is the nature of the two effects in Jacobson and here. So in Jacobson, the Supreme Court said the package essentially the officers could tell on its face right away that this is a. So could Mrs. Wolfe in this case. She was, contrary to my hypothetical, authorized to use the hard drive. She looks at it and she sees what she thinks is something on its face that's disturbing and so she turns it over to the authorities. Why is that different? Well, I think a few things, Your Honor. First, I would disagree with the factual characterization that she was authorized to use a hard drive. In fact, she had to guess the password to get access into the drive. But to go to Judge Gwinn's question, I think the other important distinguishing factor is the hard drive on its face is not incriminating. I think probably every single person in this courtroom has an external hard drive on it with them or in their house, and that hard drive can have both contraband on it and can have completely legitimate materials on it. In fact, in the record, Mrs. Wolfe noted that she told officers on page 141 of the record it has a statement from Mrs. Wolfe that she gave to the police that says she found, quote, many expected things, end quote, like school records and photos. And so the difference is in Jacobson, the package only could lead to one conclusion. It was contraband. The hard drive, maybe there was contraband. Well, there was contraband on it, but there was also material that was not contraband. Is there any indication that she was acting as an agent for the law enforcement, that they had any indication ahead of time and directed her to try to access the hard drive through trying to guess the password? No, I don't think she was acting as a government agent. I think it was solely a private search. So when she presents the hard drive then, she basically gives the government the indication that it is not much different than the Jacobson, doesn't she? I would disagree. I think it would be a very different scenario if she came with the specific images she saw and let's say hypothetically she had copied the images she had seen onto a thumb drive and given the thumb drive over, I don't think we would be here complaining. I only have one minute left, Your Honor, and I'd like to reserve the rest of my time for rebuttal. All right. Thank you. Good evening. Good morning, Your Honors. May it please the Court. Jonas Lerman for the United States. Your Honors, the exclusionary rule is designed to deter government misconduct, and here there wasn't any. I'm happy to talk about any of the issues in the case, but it seems like the seizure issue. Well, I'd like to talk about the sentencing issue. Oh, sure. It's one that your colleague didn't get a chance to get to. Why wasn't this sort of improper bargaining between the judge and the defense? Because this was, first of all, not the judge's idea. The judge began the sentencing hearing by saying, as judges often do, that he had a sort of tentative sentence in mind. He had some concerns about the acceptance of responsibility issue. He articulated a few different concerns, and one of those was that the defense had refused to pay a penny of restitution. Now, totally out of the blue, defense counsel then offered up this stipulation, which she said she had discussed with her client before the sentencing hearing. So this was something they had talked about already. And she said that if that's a concern of the Court, we would offer to withdraw our objection. And, again, this took the judge by surprise. He said, what do you mean? She said we would moot the issue for appeal and we would agree to pay restitution. Didn't the judge, though, specifically say the restitution was one of the problems he had with giving a third level? Yes, he did. I mean, he was wrong on that, wasn't he? No, I don't think he was wrong. And, in fact, your side supported giving the third level, didn't you? Yes, we did. And the third level is designed to keep the government from unnecessarily expending resources. Yes, although the district court is required to make an independent determination. What would restitution have to do with expending resources before trial? Well, I don't know that that's the – so that's what animates whether the government needs to move for that third point. The guidelines aren't quite as clear that the district court is required to award the third point. And in the sentencing memo, the defense asked the district court to make an independent assessment of that third point. Yeah, but his – the district judge's comments clearly pointed to the restitution as being one of the problems he, I think, mistakenly believed was the, you know, the issue as to why the third level shouldn't be given. Well, I think, as the full transcript makes clear, he had more general concerns about acceptance of responsibility and demonstration of contrition. But you're right. I mean, that early conversation was about the third point. And if this allays your concerns, he may have been mistaken about that. But he hadn't made his ruling on that yet. And before he had made that ruling, the defense offered up this waiver. And under those circumstances, I mean, withdrawing an objection, you know, the district court might have been wrong about the third point. But explicitly withdrawing an objection and saying, we don't want to appeal this issue, Your Honor, you know, the judge should be able to take the defense attorney out of her work. But here's the thing about this. After they offered to withdraw the objection to restitution, then the district court said, and you're going to agree not to appeal it, right? And then began questioning them about waiving the appeal. I don't recall that they had volunteered that. Am I incorrect there? So the sequence went like this. First, defense counsel said, Mr. Wolf and I have discussed it. We would obviously defer to Your Honor if the court would want to impose restitution and waive the issue. Now, a waived issue is by definition unappealable. The judge says, what does that mean? Counsel goes on. That means that if the court is concerned about not awarding the third point based on restitution, Mr. Wolf would concede the restitution and moot that issue on appeal if that's important to Your Honor. So that's before the judge said anything about waiver of appeal. The court responds, well, is he agreeing to pay a certain amount of restitution for the victims? Defense counsel, we would agree to pay the amount that the probation office recommended. I don't think it's a sound legal analysis. However, I would waive that issue for appeal, Your Honor, if that is something that Your Honor is concerned about. And then at the end of that discussion, the judge reconfirms, so we're clear, Ms. Hansen. Mr. Wolf will pay the restitution to the three victims in the amount specified in the pre-sentence report and not challenge that order on appeal. Is that right? Defense counsel so waived. So your position is that the court, the court stated rightly or wrongly its concern about the third acceptance of responsibility point. And the impetus to offer up withdrawing the objection for restitution and waiving the issue of appeal was all the defense counsel. Yes. So there was not bargaining on the part of the district court. He didn't make an offer to withdraw. Correct. And in that way, it's very different from Gonzales-Melcher, the case that the defense has relied on. I mean, there the district court initiated the negotiations. He said, I want to hear the defendant say, I'll accept the judgments of this court. I'm not going to waste anybody else's time and money. And the judge said, if the defendant says those things, he'll receive a below guideline sentence. And the judge said somewhere in the range of 60, 65 months. So there was real bargaining going on there, and the judge was the driver of that bargaining. And we just don't have that here. What if we treated the waiver as ineffective? Is there any basis for upsetting the restitution numbers? They're in the probation officer's report. The other side, although it contests what happened, doesn't present any evidence that they're unreasonable. We could, even if we ignored the waiver, we would end up affirming the restitution award, isn't it? That's the only part of the sentence that the other side really attacks, isn't it? Yes. And that's a point we made in our answering brief, that even if there was not a valid waiver here, this would have been invited error. And even, I mean, it's really quintessential invited error. They're criticizing the other. They raised objections, though, to the restitution amount, right? They said it didn't comply with Paroline and the other galen in our circuit. Right. They said $0 was the proper restitution amount. And the government said, no, we've complied with Paroline and here is our analysis. And then the district court made no finding or determination. What do we do about that? Well, again, that's classic invited error, I think, because had the defendant not stipulated to pay $6,000 as recommended by probation, Judge Donato would have made the required findings. But because he had a stipulation presented to him by one of the parties that she said she had discussed with her client before the sentencing hearing. And withdrew the objection. So there's no reason to make the findings. And so even if this Court didn't find a waiver or invited error, it would be at most reviewed for plain error. And under that standard, even if there's error and it's plain, the defense would need to show that there's a reasonable probability that the Court would have imposed another amount of restitution. How do you disaggregate in these cases? I've never really understood how one does so. Is it by the number of views? Is it by? So in Paroline, the Supreme Court set out several different factors that it said sentencing judges may consider, I think might consider was the phrase. And did the – and so my question is, did the probation report use some method for its – for disaggregation? No. The PSR says this is left to the district court to decide. Right. But recommended $2,000 per victim. So that's not actually in the PSR. That's in a – But do we have that letter? I couldn't find it in the record. It's not in the record. I have a copy of it, but it's not in the record. Okay. It was emailed to the – to the Court and to the courts. So I was trying to see whether there was something in the record that disaggregated, and your answer is there's not. There's not. I mean, there's the – there's the disaggregation articulated in the government's sentencing memo, and it goes through the Paroline factors. And, you know, Paroline recognizes this is not a mathematical inquiry. It's difficult. But Paroline makes clear that victims in this – in these types of cases are entitled to restitution, and it shouldn't be a token amount. And the statute, 2259, also makes restitution mandatory. Well, indeed, we couldn't have zero restitution. No. Because the statute requires – requires restitution. Correct. If I could respond briefly to a couple of the defense points on the seizure issue. Black really is the controlling precedent here. The defense tried to distinguish it because Mr. Wolfe didn't give his wife the hard drive. But in Black, the defendant told his secretary that she was not permitted to disclose these documents to other people. So it's similar to the hypo that Judge Hurwitz was talking about. Also, in Black, it was the defendant who was paying for the secretary's apartment where these documents were found. And moreover, in Black, you know, the government was – was much more active in sort of pursuing the evidence there than we have here. And Black distinguished the facts of that case from what this Court described as sort of an easier case. And the easier case was – so the Ninth Circuit said this is not a case in which the private individual who undertook the search initiated the contact with the government. But the fact that the government contacted her, the secretary, rather than the other way around, does not preclude a finding that she cooperated voluntarily. So we're really in the easier category of cases here. And let's see if there's anything else I wanted to touch on. Did you also address the argument that the district court erred in failing to consider the Henderson argument? Sure. So I think a threshold issue is the standard of review. The parties disagree about that. It is reviewed for plain error. And – Is that the case even though the defendant argued this in his sentencing memorandum? Yes, because their – their argument is that the response to their policy objection was not sufficiently expressed. And under those circumstances, they need to make an objection if they want to – if they want to avoid plain error. Because Judge Notto gave ample reasons for his sentence. He clearly did not think that the child pornography guidelines were irrational or excessive. And if the defense didn't think that was a sufficient explanation for this guideline sentence, they needed to object if they wanted to avoid plain error. And one case where this Court so held was Baird, which we cite in our brief. So what is – what do you think Henderson requires here? As I – as I read the cases, what we've told the judge is that if you think you don't have discretion, you do. But is the judge required to say on the record that he thinks he has discretion? I see I'm over time, but if I can answer. This Court has never held that the judge is required to use magic words or, you know, go through the defendant's sentencing memorandum without the benefit of any objections from the defense and say, I'm rejecting this argument on page 2, I'm rejecting this argument on page 4. If there's no indication that the judge failed to recognize his discretion to vary on policy guidelines, and if the – the sentencing judge gave sufficient reasons for his sentence, that's enough. And this Court rejected a similar Henderson argument in the Baird case where it said that the district court – the defendant there had claimed that the district court procedurally erred by failing to address his argument that the district court should exercise its Kimbrough discretion, but this Court reviewed for plain error because the defendant didn't raise that objection in the sentencing hearing. So this was a sufficient explanation of why the judge thought a 108-month sentence was appropriate. He described the guidelines as advisory. He said, I've read your papers. Is there anything else I should be considering? Defense counsel said no. And, again, the judge clearly didn't think that the guidelines were excessive in this case or as a general matter. Now, you know, reasonable jurists can disagree on that question. They can write law review articles on that question. But, you know, a judge is not required to vary, and Henderson says that. You know, if the judge doesn't have a policy disagreement with the guidelines, he's not required to vary downward. Thank you. Thank you very much. Is there kind of an obligation of the sentencing judge to at least address a non-frivolous argument made by a defendant? Absolutely, Your Honor. And that's the instruction of the Supreme Court in Rita, which said, I think, two very pertinent things. First is, when a non-frivolous reason is given to a defendant, the defendant to a sentencing judge, the court has to, quote, go further and explain why he has rejected those arguments. So the district court asked for any, are there any pending objections by the defense to the pre-sentence report, and the defense went through a few but didn't raise that issue. So what do we do with that? Well, I think it's, I don't know if it's necessarily characterized as an objection to the pre-sentence report, because I think the pre-sentence report calculates the guideline range. And apart from the acceptance of responsibility discussion, there really was no disagreement about what the properly calculated guideline range is. So there isn't, then, a guideline argument tethered to some, there's just a request that the district court exercise its discretion. And can you respond to the government's argument that it was clear that the district court was exercising its discretion, that it reviewed the material and went through its reasoning, and there was no objection from the defense? So what do we do with that? So my time is up, but I will obviously try to answer the question. I think what the issue is, is it was essentially a 3553A factor. And RETA is specifically concerned with 3553A factors. It goes to the seriousness of the offense, the nature and characteristics of the offense, and to the guidelines, policy statements, or the sentencing commission's policy statements, rather. And so the district court was presented with a 3553A argument to reject 2G2.2. RETA says when a court is presented with a non-frivolous argument, it has to go further and explain its reasons for why it rejected it. Sotomayor, don't you have to show prejudice? Well, I think I do. In this case, what gives me trouble is the judge says, I think the 108-month sentence understates the gravity of the offense and is too lenient. So under those circumstances, and then gives it. Under those circumstances, how do you get a better sentence if the judge expressly considers and says, I know I've got the ability to go, you know, to depart downward. I'm not required by the guidelines to give you this sentence. He says, I'm giving you this sentence even though I think it's too lenient. I think given the way the sentencing hearing started with the discussion about the acceptance of responsibility and the restitution waiver, it's our position that sort of derailed the entire sentencing hearing. And I can imagine a scenario where on remand, when the district court does not engage in improper negotiation and appropriately grants the third acceptance of responsibility point and then engages with the Kimbrough-style arguments, there would be a possibility of a different sentence. And I'll end by noting it's — in the record, if you look at the sentencing discussion, it's pretty clear that the probation office in the pre-sentence report had noted, you know, one sentence — had not initially given them the third point for acceptance, and its sentencing recommendation changed after the district court ultimately said it was going to grant the third point. And so I think a do-over here — Please wrap up. Sure. I think a do-over here would lead to a different result. Thank you. Thank you for your arguments. The case of United States v. Wolf is submitted.
judges: Ikuta, Hurwitz, Gwin